O

# United States District Court
# Central District of California

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>   Plaintiff,<br><br>   vs.<br><br>RAMON ANDRES ECHEVARRIA,<br><br>   Defendant. | Case № 13-CR-00678-ODW<br><br>**ORDER DENYING DEFENDANT'S MOTION PURSUANT TO MOTION FOR SENTENCE REDUCTION PURSUANT TO 18 U.S.C. § 3582(c)(1)(A) [DE-76]**[1] |

### I.   INTRODUCTION

Defendant Echevarria has brought a motion for reduction in his sentence on ground that he qualifies for compassionate release. Specifically, he states he is overweight and has Eptein-Barr. He provides no medical records to indicate how the conditions of which he complains are being managed while in prison. On April 8, 2020 he wrote to the warden of what the court assumes is Lompoc requesting

---

[1] "DE" designates Docket Entry

emergency consideration of his request for compassionate release under section 3582(c)(1)(A). Exhibit E of "Emergency Motion to Reduce the Term of Imprisonment under 18 USC 3582(c)(10(A)(i)". Without any evidentiary support, he claims to have Epstein-Barr, and suffer from obesity. Again, the Court finds it significant that none of his medical records have been provided to the court.

## II. DISCUSSION

### A. Defendant Has Not Made a Case for Compassionate Release

Because the requested relief is both drastic and permanent, it is subject to strict statutory conditions. First, a district court can evaluate a defendant's request for compassionate release only "after the defendant has fully exhausted all administrative rights" before the Bureau of Prisons ("BOP"). Specifically: after the defendant has fully exhausted all administrative rights to appeal, a failure of the BOP to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.] 18 U.S.C. § 3582(c)(1)(A). This requirement is mandatory. *United States v. Alam,* 960 F. 3d 831, 832 (6th Cir. 2020); *United States v. Raia, 954* F. 3d 594, 597 (3d Cir. 2020. From the standpoint of the district court it is jurisdictional. See generally *Shaw v. Bank of America Corp.,* 946 F.3d 533, 541 (9th Cir. 2019) ("statutorily-provided exhaustion requirements deprive the court of jurisdiction"); *United States v. Weidenhamer*, No. CR 16-1072-1-PHXROS, 2019 WL 6050264, at *2 (D. Az. Nov. 8, 2019) (citing cases). In this case, no evidence has been brought to the Court's attention that his purported communication to the unnamed warden of his facility was actually sent. Second, in evaluating compassionate-release requests, courts

must follow both the statute and relevant, binding policy statements. See *id*.; 28 U.S.C. § 994(t); USSG § 1B1.13. Pursuant to those authorities, to be eligible for compassionate release, a defendant must demonstrate: (1) the existence of extraordinary and compelling reasons, within the meaning of the statute; and (2) that he is not a danger to the community. 18 U.S.C. § 3582(c)(1)(A). Specifically, the statute requires that any reduction be "consistent with applicable policy statements issued by the Sentencing Commission"--in this case, USSG § 1B1.13. *Id*.

### 1. DEFENDANT IS NOT MEDICALLY ELIGIBLE FOR COMPASSIONATE RELEASE

To be eligible for compassionate release, a defendant must demonstrate "extraordinary and compelling reasons warrant[ing] such a reduction," "consistent with applicable policy statements issued by the Sentencing Commission." *Id*. Thus, as courts have recognized, Congress intended that the "Sentencing Commission, not the judiciary, determine what constitutes an appropriate use of the 'compassionate release' provision." *United States v. Willingham*, No. CR113-010, 2019 WL 6733028, at *2 (S.D. Ga. Dec. 10, 2019) (noting split in authority). The Sentencing Commission's policy statement — USSG § 1B.1.13 — while not binding on the district court, does inform its decision. *United States vs. Aruda,* 20-10245, (9th Cir Apr 4, 2021) See *Dillon vs. United States*, 560 U.S. 817, 827 (2010); see, e.g., *United States v. Nasirun*, No. 8:99-CR-367, 2020 WL 686030, at *2 (M.D. Fla. Feb. 11, 2020). But see *United States v. Brooker,* 2020 WL 5739712, at *6–7 (2d Cir. Sept. 25, 2020) (finding that USSG 1B1.13 Application Note 1(D) does not apply to compassionate release motions brought

directly to the court by a defendant under the First Step Act). "General concerns about possible exposure to COVID-19 do not meet the criteria for extraordinary and compelling reasons for a reduction in sentence set forth in the Sentencing Commission's policy statement[.]" *United States vs. Eberhart*, 448 F. Supp. 3d 1086, 1090 (NDCA 2020.  Those criteria include, as relevant here:

- The medical condition "of the defendant": specifically, whether the defendant has either a "terminal illness" or a "serious physical or medical condition" that "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which [s]he . . . is not expected to recover."  USSG § 1B1.13, comment. (n.1(A)(i)-(ii));

- The "age of the defendant": specifically, whether defendant is "at least 65 years old," is "experiencing a serious deterioration in physical or mental health because of the aging process," and has served at least 10 years or 75 percent of her term of imprisonment.  *Id.,* comment. (n. 1(B)); or

- "As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with," her illness, age, and family circumstances.  *Id.,* comment. (n.1(D)).

The global COVID-19 pandemic is not a factor specific to defendant's case at

all — and, while his anxieties may or may not be frivolous, he offers no case-specific facts establishing his eligibility for compassionate release under USSG § 1B1.13. Although identifying some specific health concerns, he primarily emphasizes the general risk of COVID-19: arguments that are general, wide-ranging, and would apply to essentially every inmate presently in custody. In the government's Opposition to the instant motion, it is mentioned that Defendant Echevarria has been fully vaccinated. This should allay the majority of his concerns about both contracting the virus and having a serious negative outcome were he to catch COVID-19. In the final analysis Defendant has not alleged that he has a terminal illness or an illness which "substantially diminishes [his] ability [ . . .] to provide self-care within the environment of a correctional facility and from which he . . . is not expected to recover." USSG § 1B1.13, comment. (n.1(A)(i)-(ii));

 "[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." *Raia*, *supra,* 954 F.3d at 597; see also *Eberhart*, *supra,* 448 F. Supp. 3d at 1090 ("[A] reduction of sentence due solely to concerns about the spread of COVID-19 is not consistent with the applicable policy statement of the Sentencing Commission as required by § 3582(c)(1)(A)."). To classify COVID-19 as an extraordinary and

compelling reason, by itself, would be inconsistent with the text of the statute and the policy statement. Moreover, it would have detrimental real-world effects: interfering with BOP's organized anti-COVID-19 efforts, resulting in the inequitable treatment of inmates, and undercutting the strict criteria BOP employs to determine inmates' eligibility for sentence reductions and home confinement. Section 3582(c)(1)(A) contemplates sentence reductions for specific individuals, not the widespread prophylactic release of inmates and the modification of lawfully imposed sentences to deal with a viral pandemic as it might affect a fully vaccinated prisoner.

**2. DEFENDANT CONTINUES TO POSE AN UNACCEPTABLE DEGREE OF RISK TO THE COMMUNITY.**

As the government notes in its opposition, and a point which Defendant has failed to address, much less convincingly argue, he remains a danger to the community. The conduct which had brought him before the court in the first instance was especially vile. The government has adequately captured the extent of Defendant's degeneration and depravity in its opposition papers and that conduct will not be repeated here. Suffice it to say Defendant has not even remotely made out the case for his early release from prison and reintegration into the community. While it is encouraging that Defendant is spending his time in custody productively, though not especially challenging for someone with two undergraduate degrees, the Court would have been more interested in seeing evidence of him dealing with his

fascination with child pornography. That is, after all, what has brought about his entanglement with the criminal justice system and what makes the Court view him as a continuing danger to the community. The Court is particularly impressed by an almost complete lack of empathy for the torture endured by very young children by adult males, all for the sexual gratification of similarly inclined adult males such as Defendant Echevarria.  The permanent psychological damage done to the children is perhaps incalculable   Likewise, the risk of recidivism cannot be accurately predicted. He could, however, at least make an attempt to convince the court that he is mindful of the harm he has done and demonstrate he is taking steps to learn to control his unacceptable impulses.  Instead, his time is spent reciting facts about the spread of COVID-19 throughout the Bureau of Prisons, facts well known to every federal court in the country. Given that he is fully vaccinated, his lengthy memorandum – which unnecessarily exceeded the permissible page limit - was an unnecessary expenditure of his time and not terribly illuminating to the Court.   His request for early release is therefore **DENIED**.

    **IT IS SO ORDERED.**

DATED:    April 12, 2021

_____
OTIS D. WRIGHT,II
UNITED STATES DISTRICT JUDGE